UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 25-cr-289 (LMP/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| JOHN MICHAEL DUFFY, | |
| Defendant. | |

Raphael B. Coburn, **United States Attorney's Office, Minneapolis, MN**, for Plaintiff.

Jordan S. Kushner, **Law Office of Jordan S. Kushner, Minneapolis, MN**, for Defendant.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant John Michael Duffy is charged with (1) conspiracy to distribute 500 grams or more of methamphetamine (Count 1); (2) possessing a firearm in furtherance of drug trafficking (Count 5); and (3) three counts of possession with intent to distribute methamphetamine on January 30, March 17, and August 4, 2025 (Counts 4, 7 and 9). ECF No. 92. The superseding indictment also alleges forfeiture against Mr. Duffy, including $6,396.51, 20 wristwatches, and a PF 905 Polymer 80 semi-automatic pistol without a serial number seized on January 30, 2025, and $2,835.00 seized on March 17, 2025. *Id.* at 6–7. Counts 1 and 4 carry 10-year mandatory minimum sentences, *see* 21 U.S.C. § 841(b)(1)(A), and Count 5 carries a 5-year mandatory minimum sentence consecutive to any sentence on the other counts, *see* 18 U.S.C. § 924(c)(1)(A).

Following a hearing, which included testimony of Special Agent Joshua Wicker of the FBI, United States Magistrate Judge Jon T. Huseby granted the government's motion for detention and ordered Mr. Duffy detained pending trial. *See* Order of Detention, ECF No. 56. Judge Huseby considered "the factors under 18 U.S.C. § 3142(g), the presumption of detention, the allegations of the indictment, the bond report, the testimony of Special Agent Wicker, and exhibits presented by both parties," and concluded "by clear and convincing evidence that no condition or combination of conditions of release would reasonably ensure the safety of the community." *Id.* at 2. Judge Huseby did not specifically opine on Mr. Duffy's risk of non-appearance.[1]

After that hearing and resulting detention determination, Mr. Duffy moved under 18 U.S.C. § 3142(f) to reopen his detention hearing based on new information material to the issue of whether there are conditions of release that will reasonably assure the safety of the community. ECF No. 62. Specifically, Mr. Duffy had been accepted into Minnesota Adult and Teen Challenge's High Intensity Residential Program. ECF Nos. 62, 63.

A second detention hearing was held before United States Magistrate Judge Elizabeth Cowan Wright. ECF No. 86. At the hearing, Judge Wright first found that new information exists that was unknown at the time of the first detention hearing sufficient to reopen detention. ECF No. 98 at 25–26. Then Judge Wright reviewed the factors to be

---

[1]   At the detention hearing, the parties focused principally on the danger to the community. *See* ECF No. 64 at 61:23 ("And I haven't spoken much about history of flight, Your Honor.") Because the Court finds that the government met its burden as to danger to the community, it does not need to do an independent analysis of risk of non-appearance.

considered along with the recommendation of release with residential treatment from U.S. Probation and Pretrial Services (USPPS). *Id.* at 26. Judge Wright gave serious consideration to release with residential treatment given Mr. Duffy's struggles with addiction and request for treatment, but was, on balance, persuaded by the totality of other factors, including the weight of the evidence, which is not considered by USPPS in their recommendation. *Id.* at 27–28. Significantly, Judge Wright found the weight of the evidence "is indeed strong against Mr. Duffy," including the results of three searches where a significant amount of methamphetamine was recovered, including "evidence indicating an attempt to destroy evidence in the third search." *Id.* at 27. Additionally, Judge Wright noted the recovery of a firearm during the first search. *Id.* Overall, Judge Wright found that the recovery of a weapon, the amount of drugs, the number of cell phones found, and "the other indicia of drug trafficking" present "a significant danger to the community from the fact that it appears that Mr. Duffy, based on what the Court has in front of it, was taking a leading role in drug trafficking and going beyond what a person might do simply to sustain an addiction." *Id.* at 28. Judge Wright denied the motion "insofar as release to Minnesota Adult and Teen Challenge is sought." *Id.* at 29.

This matter is now before this Court on Mr. Duffy's motion to revoke the detention order. ECF No. 101; *see* 18 U.S.C. § 3145(b) ("If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."). Mr. Duffy argues that Judges Huseby and Wright were wrong to find the United States had proven by clear and convincing evidence that he was a present danger to the community. Specifically, Mr.

3

Duffy challenges the determination that he played a leading role in the drug-trafficking conspiracy and that he was deemed to be a greater danger warranting detention than his co-defendant Tyler Alm, who has a significant criminal history and failures to comply with supervision conditions and other court orders. ECF No. 101 at 4–5. Moreover, Mr. Duffy requests a de novo review of the detention factors, contending that Judges Huseby and Wright did not specifically address the § 3142(g) detention factors and submit that analysis in written findings. ECF No. 101 at 6. Mr. Duffy suggests that less restrictive means such as release to a "reputable residential treatment program in a highly structured and monitored setting" would reasonably assure the safety of the public. *Id.* The United States provided a 17-page response in opposition to Mr. Duffy's motion to revoke detention—marshaling the evidence in the Pretrial Services Report and from the first two hearings. ECF No. 114.

The Court has considered Mr. Duffy's arguments and conducted a de novo review. *See United States v. Maull*, 773 F.2d 1479, 1481–82 (8th Cir. 1985) (en banc). For the reasons that follow, the Court denies Mr. Duffy's motion and orders that he be detained pending trial.

## ANALYSIS

A court may order a defendant detained pending trial only if the government either (1) proves by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the defendant's appearance or (2) proves by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. *United States v. Abad*, 350 F.3d 793,

4

797 (8th Cir. 2003). Whether sufficient conditions exist depends on the factors listed in 18 U.S.C. § 3142(g), including: (1) the nature and circumstances of the crime; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant to the community or to an individual. *Id.*

### Factor 1: The Nature and Circumstances of the Crime

Mr. Duffy is charged with conspiracy to distribute 500 grams or more of methamphetamine, possessing a firearm in furtherance of drug trafficking, and three counts of possession with intent to distribute methamphetamine over an eight-month period in 2025. ECF No. 92. The drug counts carry a rebuttable presumption of detention, 18 U.S.C. § 3142(e)(3)(A), as does the gun count, § 3142(e)(3)(B). Conviction on the charges against Mr. Duffy would require a sentence of at least 15 years and up to lifetime incarceration. As such, the nature and circumstances of the alleged crime are serious and weigh against finding that Mr. Duffy should be released pending trial.

### Factor 2: The Weight of the Evidence Against the Defendant

The evidence against Mr. Duffy is very strong. Special Agent Wicker testified at the original detention hearing. ECF No. 64 at 5. He is a police officer with the Bemidji Police Department currently assigned to the FBI's Paul Bunyan Drug Task Force. *Id.* He has more than 10 years of experience investigating drug crimes. *Id.* at 5, 11. Special Agent Wicker testified about three separate search warrants executed at Mr. Duffy's residence where significant amounts of methamphetamine were recovered. In January 2025, law enforcement recovered approximately a pound-and-a-half of high-purity

methamphetamine in packaged bags, a firearm, a small scale "typically used to weigh smaller user amounts of methamphetamine," and a triple beam scale "usually used to weigh larger amounts of controlled substances." *Id.* at 14. Special Agent Wicker indicated that it was a distribution amount. *Id.* at 15. The presence of a firearm was significant because "drug traffickers will use firearms to protect themselves and their product" and "to threaten people who owe them money or as a show of force." *Id.* at 15–16. A drug ledger was also recovered, which showed "several people on this ledger and the dollar amounts that are owed to [Mr. Duffy], so he's got a significant amount of cash flowing out there that people owe him." *Id.* at 17–18. Mr. Duffy also had a money counter, which "typically you only see money counters with large-scale drug trafficking organizations." *Id.* at 18. Mr. Duffy's DNA was present on the firearm and methamphetamine packaging. *Id.* at 22; Ex. 4.

In March 2025, another search warrant was executed at Mr. Duffy's house where he and co-defendant Tyler Alm were present. *Id.* at 22. A quarter pound of methamphetamine, which is a distribution amount, and a small scale were recovered. *Id.* at 24, 26. Given this, an indictment was secured. ECF No. 1. While executing an arrest warrant of Mr. Duffy on August 4, 2025, a search warrant was also executed. It took approximately five minutes for law enforcement to enter Mr. Duffy's home. ECF No. 64 at 26. Several bags of methamphetamine were ripped open or appeared to be ripped open and shards of methamphetamine were in a yellow/orange solution. *Id.* at 29. Special Agent Wicker described this as an effort "to get rid of the evidence and to avoid prosecution for possessing controlled substances." *Id.* at 31. All of this evidence seized during three separate searches weighs against finding that Mr. Duffy should be released pending trial.

**Factor 3: The History and Characteristics of the Defendant**

Mr. Duffy is 57 years old with connections to Minnesota. *See* ECF No. 29 at 1. Mr. Duffy has been in the state since 1996 and has lived in his current home in Nowthen for the past four years. *Id.* at 2. Mr. Duffy's lengthy criminal history began when he was 20 years old. *See* ECF No. 79 at 2–3. In June 1989, Mr. Duffy was convicted in California of felony burglary followed by a first-degree felony burglary conviction in February 1992. *Id.* at 2. In August 2008, Mr. Duffy was convicted at trial in Beltrami County of felony first-degree drug possession, which was vacated in October 2009 and subsequently dismissed. *Id.* at 3. Mr. Duffy pleaded guilty to felony fifth-degree drug possession and felony receipt of stolen property in Anoka County in January 2012. *Id.* In July 2021, Mr. Duffy pleaded guilty to felony receipt of stolen property in Anoka County. *Id.* at 3. And in May 2024, Mr. Duffy pleaded guilty to felony theft of a motor vehicle in Beltrami County. *Id.* Mr. Duffy reported daily use of cannabinoids and methamphetamine and that he had previously attended substance use disorder treatment while incarcerated. ECF No. 29 at 3. Mr. Duffy is currently unemployed and reported that he may apply for Social Security Disability Income based on his current physical limitations. *Id.* at 2. The Court has no confidence that less restrictive conditions would assure the safety of the community given Mr. Duffy's lengthy and ongoing criminal history even recognizing Mr. Duffy's addiction history. Mr. Duffy's history and characteristics weigh against releasing him pending trial.

**Factor 4: The Seriousness of the Danger to the Community or to an Individual**

The serious nature of the drug and firearm charges, coupled with Mr. Duffy's criminal history and involvement in a serious drug-trafficking case, demonstrate that Mr. Duffy lacks respect for the law and poses a grave danger to the community if he is released. The danger Mr. Duffy presents to others in the community weighs against releasing him.

In conducting a de novo review, the conclusion is inescapable that Mr. Duffy poses a serious risk to the safety of any other person and the community, and Mr. Duffy's request for release, including a high-intensity drug treatment program, still presents a greater risk than this Court is willing to take.  Mr. Duffy is charged with conspiracy to traffic in methamphetamine as well as possession of methamphetamine for distribution on several different occasions.  In addition, there was a firearm recovered near the drugs.  The evidence of Mr. Duffy's guilt—as described by the government and testified to during the first hearing—appears to be very strong, and includes DNA evidence and drug-trafficking evidence, such as scales, a drug ledger, baggies, and a money counter, recovered from his home on multiple occasions.[2]  Central to this finding is the repeated engagement by Mr. Duffy in drug trafficking over the course of eight months when he knew that he was already

---

[2] The government notes that upwards of 30 cell phones were recovered from Mr. Duffy during execution of the search warrants.  ECF Nos. 64 at 53; 114 at 11–13.  While some information regarding the contents was testified to by Special Agent Wicker and proffered by AUSA Raphael Coburn, the Court did not consider this evidence in its de novo review.

the subject of an investigation.[3] Mr. Duffy's involvement appears to be more significant than merely fueling his own addiction. Mr. Duffy also has a long and troubling criminal history, including up through May 2024. In short, there is no compelling evidence that conditions of release would be effective in protecting the community.

For these reasons, after conducting its own independent review, the Court agrees with Judges Huseby and Wright and finds that detention is warranted because no condition or combination of conditions will reasonably assure that Mr. Duffy will not endanger the community.[4]

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendant's motion to revoke the order for detention (ECF No. 101) is **DENIED**.

---

[3] While this Court recognizes that there is compelling evidence of Mr. Duffy's key role in the drug-trafficking conspiracy, ECF No. 64 at 31–32, 42, whether he played a major role is not taken into account in this de novo review.

[4] The Court has reviewed the Pretrial Services Report, ECF No. 28, and the transcript from the reopened detention hearing for co-defendant Tyler Alm, ECF No. 99. The Court recognizes that the release of Mr. Alm by Judge Wright was "not an easy call." ECF No. 99 at 19. This Court is similarly persuaded that the release of Mr. Alm was warranted given that the substance use treatment provided at Adult and Teen Challenge along with location monitoring mitigates the community risk posed by Mr. Alm. As Judge Wright identified, Mr. Alm's involvement in the drug trafficking appeared to be "feeding a habit" rather than playing a major role in the conspiracy. *Id.* at 22–23. In conducting this separate review, the Court is further persuaded that the government has met its burden by clear and convincing evidence of the danger posed by Mr. Duffy, which is distinct from that of Mr. Alm. Mr. Duffy's cannot be addressed by anything short of detention.

2. Defendant is hereby ordered **DETAINED** under 18 U.S.C. § 3142(e).

3. Defendant is committed to the custody of the United States Marshal for confinement in a correctional facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

4. Defendant shall be afforded reasonable opportunity to consult privately with his counsel.

5. Pursuant to Rule 5.1(e) of the Federal Rules of Criminal Procedure, defendant is required to appear for further proceedings.

6. Upon order of the Court or request by the United States Attorney, the person in charge of the correctional facility in which defendant is confined shall deliver him to the United States Marshal for the purpose of appearance in connection with all court proceedings.

Dated: October 20, 2025        *s/Laura M. Provinzino*
                               Laura M. Provinzino
                               United States District Judge